In re Ream Thomas DAVIS, Jr. Debtor.

Ream Davis, Jr. Plaintiff,

v.

Conrad Family Ltd. Partnership, Defendant.

No. 98–3298.

United States Bankruptcy Court, N.D. Ohio.

Nov. 30, 1999.

---

Scott R. Gordon, Van Wert, OH, for Plaintiff.

Steven L. Diller, Van Wert, OH, for Defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Defendant's Motion for Summary Judgment, Memorandum in Support, and Reply; and the Plaintiff's Response to the Defendant's Motion for Summary Judgment. This Court has now had the opportunity to review the arguments presented by the Parties, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Defendant's Motion for Summary Judgment should be Granted.

### FACTS

In 1996, the Defendant/Creditor, Conrad Family Ltd. Partnership (hereinafter Conrad Family), entered into a lease agreement to rent a mobile home lot to the Plaintiff, Ream Thomas Davis, Jr. (hereinafter Mr. Davis). As a part of this lease agreement, Mr. Davis was to pay the Conrad Family a monthly lot rent, and in return Mr. Davis was permitted to move his trailer onto the mobile home lot. Sometime in 1998, however, Mr. Davis fell behind on his lot rent, and as a consequence, the Conrad Family, in October of 1998, commenced a forcible entry and detainer action in the Van Wert Municipal Court to have Mr. Davis and his trailer removed from their mobile home lot. In addition, the suit commenced by the Conrad Family

sought monetary damages from Mr. Davis for his failure to pay the lot rent.

On November 4, 1998, the Van Wert Municipal Court granted judgment in favor of the Conrad Family for possession of the premises, and to effectuate this judgment, the Van Wert Municipal Court issued a contemporaneous writ of restitution to have a court bailiff physically remove Mr. Davis from the premises by no later than the 14th of November. However, before the writ of restitution could be executed, Mr. Davis, on November, 7, 1999, filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

Thereafter, on November 12, 1998, the Van Wert Municipal Court, upon receiving notice of Mr. Davis' bankruptcy petition, issued an order staying the Conrad Family's ensuing claim against Mr. Davis for monetary damages. This order, however, did not address or require the return of the writ of restitution previously issued by the Van Wert Municipal Court; and as a result, on December 1, 1998, the bailiff for the Van Wert Municipal Court executed the writ of restitution by removing Mr. Davis and his personal property from the mobile home located on the Conrad Family property. Later, on June 24, 1999, after Mr. Davis had received his bankruptcy discharge, the Conrad Family caused Mr. Davis' mobile home to be permanently removed from their lot.

On December 7, 1998, Mr. Davis commenced the instant adversary proceeding asserting that the Bailiff's removal of him and his possessions from the trailer constituted a willful violation of the automatic stay by the Conrad Family. In addition, Mr. Davis, in his Response to the Conrad Family's Motion for Summary Judgment, seeks additional damages against the Conrad Family for their removal of his trailer from the mobile home lot.

### LAW

**11 U.S.C. § 362. Automatic stay**

Section 362 provides, inter alia, that:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of-

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title[.]

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

### DISCUSSION

■ Determinations concerning violations of the automatic stay are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Thus, this case is a core proceeding.

The Court, upon examining the facts presented in this case, finds that the following three issues are raised by Mr. Davis' Complaint, and the Conrad Family's response thereto: First, was the automatic stay violated when the Bailiff acted upon the writ of restitution issued by Van Wert Municipal Court. Second, can the Bailiff's act of dispossessing Mr. Davis from the trailer and adjacent mobile home lot be imputed to the Conrad Family, and if so, can such actions be considered willful so as to be compensable under § 362(h). Finally, did the Conrad Family's postdischarge removal of Mr. Davis' trailer from the leased mobile home lot violate the Automatic Stay.

In addressing the first issue, both the Plaintiff and the Defendant, in their arguments to the Court, indicate that resolution of the issue centers around whether Mr. Davis had an interest in the leased premises at the time he was removed therefrom. Stated in another way, both Parties propound the view that a debtor must, at the time the bankruptcy petition

is filed, have a cognizable interest in an item of property for that item of property to be afforded the protections provided by the automatic stay. The Court, however, while not disagreeing that a debtor's interest in an item of property can in many instances be indicative as to whether a creditor has violated the automatic stay, does not find that a determination of Mr. Davis' interest in the leased mobile home lot is either necessary or dispositive of the issue as to whether the automatic stay was violated in this case. A close examination of § 362(a) reveals why.

 Section 362(a) lists eight different categories of activities that must cease immediately upon a debtor filing a bankruptcy petition, the collective effect of which is to stay virtually any action to collect a debt from the debtor. *In re Excel Engineering, Inc.*, 224 B.R. 582, 592 (Bankr.W.D.Ky.1998). However, in order to ensure that all collection efforts against the debtor immediately cease, the automatic stay does not limit its prohibited list of activities to solely actions *in rem*. Instead, contained among the eight categories of prohibited activities under § 362(a) are actions aimed at the Debtor personally,[1] as well as those actions which would affect or interfere with a debtor's property or property of the debtor's bankruptcy estate. *Adm. of Veterans' Affairs v. Sparkman (In re Sparkman)*, 9 B.R. 359, 363 (Bankr.E.D.Pa.1981); *In re Passmore*, 156 B.R. 595, 598 (Bankr.E.D.Wis.1993). Specifically, relevant to this case, given that Mr. Davis was physically removed from his trailer by a state court bailiff, is

§ 362(a)(2) which provides, in pertinent part, that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of the enforcement, against the debtor ... of a judgment obtained before the commencement of the case under this title[.]" Stated in another way, § 362(a)(2) operates, during the pendency of the Stay, to suspend the enforcement by a creditor of any prepetition judgments obtained against the debtor.[2] In order to determine whether an action constitutes the enforcement of a prepetition judgment under § 362(a)(2), reference to applicable state law is necessary. *See Yoppolo v. Trombley (In re DeVincent)*, 238 B.R. 722, 725 (Bankr.N.D.Ohio 1999) (property rights are determined by reference to applicable state law); *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 415 (Bankr.N.D.Ohio. 1998) (federal courts must give state court judgment same preclusive effect as would be provided under that state's law).

 Under Ohio law, a lessor, who seeks to remove a tenant from a mobile home lot on the basis of that tenant's failure to pay rent, must comply with Ohio's Forcible Entry and Detainer Statute, (O.R.C. § 1923 et seq.). O.R.C. § 1923.02; *see generally State ex rel. Marsol Apt. Co. v. Vannuci*, 68 Ohio App.2d 181, 428 N.E.2d 468 (1980). Pursuant to this statutory scheme, the lessor must first initiate a complaint in which it is averred that the property at issue is being wrongly withheld. The complaint is then followed by a summary proceeding at which time if it is found that the averments contained in

---

**1.** For example, the following activities have all been found to violate the automatic stay, even though such activities were aimed at the debtor in a personal capacity and not against property of the debtor's bankruptcy estate: (1) telephone calls to the debtor. *Fisher v. Blackstone Financial Services (In re Fisher)*, 144 B.R. 237 (Bankr.D.R.I.1992); (2) dunning letters sent to the debtor. *In re Driggers*, 204 B.R. 70 (Bankr.N.D.Fla.1996); (3) dumping garbage on a debtor's front lawn. *Sechuan City Inc. v. North American Motor Inns, Inc. (In re Sechuan City, Inc.)*, 96 B.R. 37 (Bankr.E.D.Pa.1989); (4) placing a sign indicating that the debtor was not paying its bills.

*In re Reed*, 11 B.R. 258 (Bankr.D.Utah 1981); and (5) withholding a college transcript for failure to pay a student loan. *In re Howren*, 10 B.R. 303 (Bankr.D.Kan.1980).

**2.** The legislative history of this section states that, "execution and levy against the debtors' prepetition property are stayed, and attempts to collect a judgment from the debtor personally are stayed." H.R.Rep.No. 595, 95th Cong. 1st Sess. 341 (1977), U.S.Code Cong. & Admin. News pp. 5787, 6297; S.Rep.No. 989, 95th Cong, 2nd Sess. 50 (1978), U.S.Code Cong. & Admin. News pp. 5787, 5836.

the complaint are true, a general judgment must be rendered in favor of the lessor for possession of the premises. §§ 1923.09 (Bench Trial) & 1923.10 (Jury Trial). Thereafter, in order to effectuate the judgment, the court with jurisdiction over the matter is required to issue a writ of restitution, and within 10 days after receiving the writ, a sheriff or court bailiff is required to execute it by restoring the lessor to possession of the premises. O.R.C. §§ 1923.13 and 1923.14.

■ Upon examining this statutory framework, it is clear that under Ohio law a judicial officer who executes a writ of restitution, pursuant to a prepetition judgment, is enforcing a judgment against the debtor for purposes of § 362(a)(2), and thus is in violation of automatic stay. Supporting this conclusion is the case of *Butler v. Bellwest Management Corp. (In re Butler)*, where the bankruptcy court for the Southern District of New York held that under New York law the issuance of a state court warrant of eviction, pursuant to a judgment obtained before the commencement of the bankruptcy case, constituted the enforcement of a judgment against the Debtor within the meaning of § 362(a)(2). 14 B.R. 532, 534–35 (S.D.N.Y.1981). The difficulty, however, for the Court in this situation is that Mr. Davis, in his Complaint, does not contend that the Bailiff from the Van Wert Municipal Court should be held liable for violating the automatic stay,[3] but instead avers that the Conrad Family should be held liable for the Bailiff's dispossession of him and his personal property from his mobile home. In other words, Mr. Davis asks this Court to ascribe the Bailiff's actions to the Conrad Family.

■ Normally, of course, a party cannot be held liable for another party's violation of the automatic stay. This general rule is, however, tempered by the following two limited exceptions: First, a party may be held liable for the actions of another if an agency relationship is found to exist under state law. *In re Sumpter*, 171 B.R. 835, 843 (Bankr.N.D.Ill.1994). Second, under certain circumstances, a creditor who has taken some sort of affirmative action to collect a debt, must restore the status quo upon learning that a bankruptcy petition has been filed. *Sermersheim v. Sermersheim (In re Sermersheim)*, 97 B.R. 885, 888–89 (Bankr. N.D.Ohio 1989); *Matter of Clark*, 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986). The Court will now address the applicability of each of theses exceptions in turn.

■ Under Ohio law an agency relationship is generally formed by agreement,[4] whether express or implied, whereby the parties agree that an agent will act on behalf of the principal. *Ulhaq v. Trauma Serv. Group, P.C.*, 114 Ohio App.3d 113, 114, 682 N.E.2d 1050, 1052 (Ohio Ct. App.1996); *Lewis v. Ohio Real Estate Comm.*, 121 Ohio App.3d 23, 27, 698 N.E.2d 1023, 1025 (Ohio Ct.App.1997). In determining whether such a relationship exists, courts in Ohio first generally look to see whether the principal has the right to control the conduct of the agent when the agent is performing work on behalf of the principal. *Costell v. Toledo Hosp.*, 98 Ohio App.3d 586, 593, 649 N.E.2d 35, 39 (1994). The exact degree and scope of control necessary to form an agency relationship is, however, unsettled under Ohio law. *Hanson v. Kynast*, 24 Ohio St.3d 171, 494 N.E.2d 1091 (1986). Instead, courts in Ohio have identified various factors to determine whether the requisite amount of control exists to form an agency relationship. These factors include: (1) whether the individual is performing in the course

---

3. Notwithstanding, if a complaint had been brought against the Bailiff, issues of judicial immunity may have prevented any recovery. *See, e.g., Coates v. Peachtree Apartments (In re Coates)*, 108 B.R. 823 (Bankr.M.D.Ga.1989) (a court marshal is protected by the doctrine of judicial immunity from liability for violation of the automatic stay).

4. An Agency relationship may also arise by implication or estoppel. *McSweeney v. Jackson*, 117 Ohio App.3d 623, 630, 691 N.E.2d 303, 307 (Ohio Ct.App.1996).

of the principal's business rather than in some ancillary capacity; (2) whether the individual was receiving any compensation from the principal; (3) whether the principal supplied the tools and the place of work in the normal course of the relationship; (4) whether the individual offers his services to the public at large or to one individual at a time; and (5) the length of the relationship. *Q–Team Nursing Care, Inc. v. Clearview Convalescent Center, Inc.,* 1989 WL 65395 *3 (Ohio App. 10th Dist. June 13, 1989).

■ Upon applying the above factors to the case at hand, it is clear that the Bailiff executing the writ of restitution from the Van Wert Municipal Court cannot be said to be an agent of the Conrad Family. For example, a bailiff, being a ministerial officer of the court, would not in executing a writ be performing in the course of the creditor's business, but instead would be looking to the state court for supervision. *See Miami Motor Sales v. Singleton,* 57 Ohio Law Abs. 498, 94 N.E.2d 819, 822 (1950) (the bailiff is a ministerial officer of the court, not the agent of the plaintiff, in levying execution and selling the property described in a writ) *citing Kelley v. Vincent,* 8 Ohio St. 415 (Ohio 1858); *Earl's Lessee v. Shoulder,* 6 Ohio 409 (1834). Once more, a court bailiff in Ohio normally does not look to a creditor for compensation as O.R.C. § 1901.32 provides that a bailiff is to be paid directly by the court. Thus, given the lack of an agency relationship in this case, the Court will now proceed to examine whether the Conrad Family had an affirmative duty to take steps to prevent the Van Wert Municipal Court Bailiff from executing upon the writ of restitution issued on their behalf.

■ The purpose of the automatic stay has often been framed as a device that serves two primary bankruptcy policies. First, by halting the collection process, the automatic stay implements the fresh start policy of the Bankruptcy Code by affording the debtor a "breathing spell." Secondly, the automatic stay permits an orderly liquidation of the bankruptcy estate by preventing one creditor from obtaining payment of its claim to the detriment of other creditors. *In re Miller,* 200 B.R. 415, 417 (Bankr.M.D.Fla.1996); *In re Sky Group Int'l., Inc.,* 108 B.R. 86, 88–89 (Bankr.W.D.Pa.1989). In fulfilling these policy objectives, bankruptcy courts have been quick to realize that creditor inaction can often be as disruptive to the debtor as affirmative collection efforts. Consequently, in recognition of this problem, creditors have been required to take affirmative steps to restore the status quo to the time of the filing of the petition for relief. *In re Dungey,* 99 B.R. 814, 816 (Bankr.S.D.Ohio 1989).

■ The imposition of such an obligation upon a creditor should not, however, be taken to mean that such a duty is absolute. Instead, bankruptcy courts have generally only imposed an obligation upon a creditor to restore the status quo when the creditor has wrongfully acquired property from the debtor or the debtor's bankruptcy estate. *See, e.g., In re Roberts,* 175 B.R. 339 (9th Cir. BAP 1994) (creditor willfully violated automatic stay by continuing to accept payments from employer pursuant to a prepetition garnishment after receiving notice of bankruptcy); *Ledford v. Fidelity Financial Servs. (In re Hill),* 174 B.R. 949, 954 (Bankr.S.D.Ohio 1994) (retention of automobile casualty insurance proceeds violated the automatic stay); *In re Richardson,* 135 B.R. 256, 259 (Bankr.E.D.Tex.1992) (failure to return car after bankruptcy petition violated the stay). As a consequence, this Court declines to adopt an absolute rule that a creditor has an affirmative duty to prevent a judicial official, acting on their behalf, from executing a writ against the debtor personally. Conversely, given the central role that the automatic stay plays in the bankruptcy process, the Court will not automatically shield a creditor from liability merely because a judicial official is the one who executes the judgment on behalf of the creditor. *In re Dencklau,* 158 B.R. 796, 801 (Bankr.N.D.Iowa 1993) (not ruling out the possibility that a creditor could be

held liable for a sheriff's postpetition garnishment of a debtor's wages). For example, this Court can conceive of situations when it would be proper to hold a creditor liable for the actions of a judicial officer, such as when a creditor closely cooperates with and/or encourages a judicial officer to execute a writ. Therefore, to determine whether a creditor can be found liable for the actions of a judicial officer in executing a writ, the Court finds that the best course of action is to determine whether the creditor's conduct could be characterized as willful under the standards set forth in paragraph (h) of section 362. In applying this standard, the Court notes two major benefits. First, the application of this standard will uphold the bankruptcy policy of giving debtors a "breathing spell" by discouraging creditors from cooperating with and/or encouraging a judicial official to execute a writ. Second, debtors will not be prejudiced by this holding as, (1) all actions taken in violation of the stay are *void ab initio* regardless of whether the creditor knew of the stay, and (2) no sanctions can be imposed upon a creditor for violating the automatic stay unless their actions are found to be willful under § 362(h).[5] *See Easley v. Pettibone Michigan Corporation*, 990 F.2d 905, 909 (6th Cir.1993) (actions taken in violation of the automatic stay are void).

It is well established that a willful violation of the automatic stay, for purposes of § 362(h), only occurs as the result of a deliberate and intentional act done with knowledge of the automatic stay or of the bankruptcy filing.[6] *Matter of Davis*, 74 B.R. 406, 410 (Bankr.N.D.Ohio 1987); *see also In re NWFX, Inc.*, 81 B.R. 500, 503 (Bankr.W.D.Ark.1987) (knowledge of the bankruptcy filing has been held to be the legal equivalent of knowledge of the automatic stay). With this standard in mind, the Court first observes that the Conrad Family, from the evidence presented, never cooperated with or encouraged the Van Wert Municipal Court Bailiff to execute the writ of restitution. In addition, the Court finds that it is highly unlikely that the Conrad Family even knew that the Bailiff was going to execute the writ of restitution given that: (1) the Van Wert Municipal Court, after receiving notice of Mr. Davis' bankruptcy petition, stayed the Conrad Family's subsequent suit against Mr. Davis for monetary damages; and (2) the Bailiff did not execute the writ of restitution until December 14, 1999, which was approximately seventeen (17) days after its expiration.[7] Consequently, based upon these observations, the Court simply cannot conclude that the Conrad Family acted in a deliberate and intentional manner when the Bailiff executed the writ of restitution from the Van Wert Municipal Court. Accordingly, the Court will not impute the Bailiff's violation of the Automatic Stay to the Conrad Family.[8]

5. It should be noted that many courts have held that a creditor can also be punished for contempt for failure to abide by the automatic stay. *See, e.g., Georgia Scale Co. v. Toledo Scale Corp. (In re Georgia Scale Co.)*, 134 B.R. 69, 70 (Bankr.S.D.Ga.1991); *In re First RepublicBank Corp.*, 113 B.R. 277, 279 (Bankr. N.D.Tex.1989). However, some bankruptcy courts have held otherwise. *See, e.g., Matter of Rimsat, Ltd.*, 208 B.R. 910 (Bankr.N.D.Ind. 1997); *In re Sequoia Auto Brokers, Ltd., Inc.*, 827 F.2d 1281, 1283–91 (9th Cir.1987).

6. Section 362(h) of the Bankruptcy Code provides that, "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appro-

priate circumstances, may recover punitive damages."

7. Ohio law has held that a writ of restitution does not become void merely because it is not executed within 10 days. In addition, any cause of action for the failure of the court official to execute the writ within the ten (10) days is held by the lessor. *Smith v. MacKenzie*, 34 Ohio Op. 185, 71 N.E.2d 277 (1946).

8. It should be noted that Mr. Davis seems to allege that the Conrad family prevented him from reentering the property to remove his trailer. Depending upon the particular circumstances, such an action could constitute a possible violation of the automatic stay. However, as no substantiating evidence has

■ Before concluding, one final issue must be addressed. Mr. Davis, in his Response to the Defendant's Motion for Summary Judgment, asserts that the Conrad Family's postdischarge removal of his trailer from the mobile home lot constituted a willful violation of the automatic stay. The Court, however, without evidence that the mobile home remained property of Mr. Davis' bankruptcy estate after his bankruptcy discharge was granted, must reject this argument as § 362(c) provides that the automatic stay terminates when an individual debtor receives a discharge or the property subject to the stay is no longer property of estate under § 541(a).

In summary, although finding that Mr. Davis' removal from the trailer and adjacent mobile home lot by the Van Wert Municipal Court Bailiff violated the automatic stay, the Court does not find that the Conrad Family acted willfully in this regard. Consequently, the Court does not conclude that Conrad Family directly violated the automatic stay as set forth in 11 U.S.C. § 362(a). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Defendant's Motion for Summary Judgment be, and is hereby, GRANTED.

been presented to support this allegation, the Court will not consider it in its decision.